## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds,** | ) ) ) ) ) ) ) ) | FILED: JULY 22, 2008<br>08CV4146<br>JUDGE ANDERSEN<br>MAGISTRATE JUDGE ASHMAN<br><br>PH |
| **Plaintiffs,** | ) | **Case No.** |
| **v.** | ) ) | |
| **BENSON CONSTRUCTION COMPANY, an Illinois corporation, and MARK W. BERGLUND, individually,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

### COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy Carollo, and Charles Ingrassia, for their Complaint against Defendants Benson Construction Company and Mark W. Berglund, individually, state:

### COUNT I

### (Default on Installment Note)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

1

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and Federal Common Law.

    2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

    3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

    4.      Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

    5.      Defendant Benson Construction Company (hereinafter "Benson" or the "Company") is an Illinois corporation. The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.     Defendant Mark W. Berglund ("Berglund") is and was at all times relevant herein a shareholder and officer of Benson.

7.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and Concrete Contractors Association of Greater Chicago ("CCA") have been parties to various area-wide collective bargaining agreements, the most recent of which has been in effect since June 1, 2006 ("Agreement").  The CCA is comprised of various member contractors.  The contractors who are members of the CCA are by virtue thereof bound to the terms of the Agreement between the Union and the CCA as well as the Funds' respective Agreements and Declarations of Trust.  The Company is a member of the CCA and, as a result, is bound to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust.  A true and accurate copy of the CCA's Membership list as of March 27, 2002, is attached hereto as Exhibit A.

8.     The Funds have been duly authorized by the Construction and General Laborers' District  Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the GDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LCDMC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers Association ("ISPA") to act as an agent in the collection of contributions due to those funds.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed up to 20 percent liquidated damages plus interest.

10.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11.     The Agreement obligates the Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

12.     Benson entered into an Installment Note ("Note") with the Funds on or about March 10, 2008 to submit payment of amounts due and owing pursuant to an audit conducted of the Company's books and records for the period of May 1, 2005 through October 31, 2007. A true and accurate copy of the Note is attached hereto as Exhibit B.

13.     Defendant Berglund signed a Guaranty of Payment and Indemnification ("Guaranty") on or about March 10, 2008 individually guaranteeing payment of the amounts due under the Note to the Funds. A true and accurate copy of the Guaranty is attached hereto as Exhibit C.

14.         Paragraph 8 of the Note provides that

4

Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

See Exhibit B.

15.    Paragraph 1 of the Guaranty provides that

. . . The Guarantor also agrees to be personally liable for all monthly benefit contributions and/or union dues owed from the Company to the Funds, the District Council and all ancillary funds that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

See Exhibit C.

16.    Paragraph 13 of the Guaranty provides that

The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement [sic] against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees.

See Exhibit C.

17.    The Company failed to timely submit its July 2008 payment pursuant to the Note and is in default on the Note.

5

18.    The Company has failed to submit its benefit reports and/or contributions to the Funds, for the period of April 2008 forward, and is accordingly in default on the Note.

19.    The Company and Berglund's actions in failing to submit timely payments in compliance with the Note violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

20.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, the terms of the Note and the Guaranty, and Federal Common Law, the Company and Berglund are liable to the Funds for the full amount remaining due on the Note plus interest and liquidated damages for all late payments and the attorneys' fees and costs incurred by the Funds in bringing this action.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Benson Construction Company and Mark W. Berglund, joint and severally:

a.    entering judgment against Defendants for the full amount remaining due on the defaulted Note, plus interest and liquidated damages, and the attorneys' fees and costs incurred by the Funds; and

b.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Reports and Pay Employee Benefit Contributions)

21.     Plaintiffs reallege paragraphs 1-16 of Count I.

22.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a)     failed to submit reports and/or contributions to Plaintiff Laborers' Pension Fund for the period of April 2008 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to submit reports and/or contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of April 2008 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to submit reports and/or contributions to Laborers' Training Fund for the period of April 2008 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)     failed to report and/or pay all contributions owed to one or more of the other affiliated funds identified above for the period of April 2008 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

7

(e)    failed to submit payment of $4,000.00 due on a contract for cash bond entered into by the Company to satisfy its obligation to obtain and maintain a bond in accordance with the Agreement (A true and accurate copy of the Contract for Cash bond is attached hereto as Exhibit D).

23.    The Company's failure to submit contributions and submit payments due under its Contract for Cash Bond violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

24.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, Federal Common Law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, audit costs, if any, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

25.    Pursuant to the terms of the Guaranty, Defendant Berglund is liable to the Funds for any amounts owed to the Funds by the Company for the period of April 2008 forward and all associated liquidated damages and interest and payments due under the Company's Contract for Cash Bond.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment Defendants Benson Construction Company and Mark W. Berglund, jointly and severally:

a.    ordering the Company to submit benefit reports and contributions for the time period of April 2008 forward and to submit its books and records to an audit, upon demand;

b.      entering judgment in sum certain against Defendants on the amounts due and

owing pursuant to the April 2008 to present reports, any associated liquidated damages and

interest, the audit, if any, including any outstanding contributions, interest, liquidated damages,

accumulated liquidated damages, and attorneys' fees and costs;

c.      ordering Defendants to pay the amounts due on the Contract for Cash Bond; and

d.      awarding Plaintiffs any further legal and equitable relief as the Court deems

appropriate.

## COUNT III

### (Failure To Submit Reports and Pay Union Dues)

26.     Plaintiffs reallege paragraphs 1 through 16 of Count I.

27.     Pursuant to agreement, the Funds have been duly designated to serve as collection

agents for the Union in that the Funds have been given the authority to collect from employers

union dues which should have been or have been deducted from the wages of covered

employees.  Dues which are not submitted in a timely fashion are assessed 10 percent liquidated

damages.

28.     Notwithstanding the obligations imposed by the Agreement, the Company has

failed to withhold and/or report to and forward union dues that were deducted or should have

been deducted from the wages of its employees for the period of April 2008 forward, thereby

depriving the Union of income and information.

29.     Pursuant to the Agreement, the Company is liable to the Funds for the unpaid

union dues, as well as any liquidated damages, reasonable attorneys' fees and costs as the

Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

30.     Pursuant to the terms of the Guaranty, Defendant Berglund is liable to the Funds for any dues owed by the Company for the period of April 2008 forward, all associated liquidated damages for the dues owed by the Company for the period of April 2008 forward.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Benson Construction Company and Mark W. Berglund, joint and severally, for the amount of the union dues owed to date together with all liquidated damages, accumulated liquidated damages, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

July 22, 2008

Laborers' Pension Fund, et al.

By: _____
Christina Krivanek

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
Sub Office, 111 W. Jackson Blvd.
Suite 1415
Chicago, IL  60604
(312) 692-1540

## Concrete Contractors Assoc.
### Membership List -
### March 27, 2002

| Customer | Contact | Phone | Fax | Customer Type |
|---|---|---|---|---|
| C-A Cement Construction, Inc. | Anna Copestino | 630-562-4383 | 630-562-0975 | Contractor |
| Accurate Construction Inc. | Syed Hussaini | 847-329-9600 | 847-329-9605 | Contractor |
| Adjustable Forms, Inc. | James Lindquist | 630-493-8700 | 630-493-8788 | Contractor |
| Baja Concrete Construction | Al Jelnes | 630-257-1140 | 630-257-1167 | Contractor |
| Rich Baumgartner Construction, Inc. | Rich Baumgartner | 630-420-0474 | 630-420-0821 | Contractor |
| Bill Benson Construction Co | Bill Benson | 847-259-9960 | 847-259-9981 | Contractor |
| Builders Concrete Co. | Mary Fitzpatrick | 630-961-0780 | 630-930-1810 | Contractor |
| Capital Cement | David Skrzim | 773-283-3800 | 773-283-3777 | Contractor |
| Carlson Brothers Builders | Glen Carlson | 773-237-2289 | 773-237-2289 | Contractor |
| Celforce Decks | Jerry Jones | 630-231-2103 | 630-231-2104 | Contractor |
| Cerami Construction Co. Ltd. | Sal Cerami | 708-343-8500 | 708-343-8510 | Contractor |
| Colella Concrete, Inc | Vince Colella | 630-628-0981 | 630-628-0478 | Contractor |
| Concrete By Sennatron, Inc. | Sennatron | 630-406-1200 | 630-406-0908 | Contractor |
| Danior Construction Co. | Joan O'Gorman | 815-485-7075 | | Contractor |
| DeGraf Concrete Construction | Mike Pifron | 847-541-2140 | 847-382-1839 | Contractor |
| Eagle Concrete, Inc. | Mike Martin | 630-679-3860 | 630-679-2028 | Contractor |
| Elliott Construction Co | Rob Elliott | 630-469-1623 | 630-469-1957 | Contractor |
| Engineered Construction , Inc. | Thomas J Ferrariella | 219-931-8700 | 219-931-8787 | Contractor |
| Engstrom Corp. | Robert Engstrom | 630-837-3377 | 630-837-3409 | Contractor |
| Envion, L.L.C. | Loretta Young | 773-498-6060 | 773-498-6483 | Contractor |
| Executive Installations | Gary Slund | 847-382-2260 | 847-382-2260 | Contractor |
| F.H. Leitweber Co., Inc. | Fred Leitweber | 708-424-7000 | 708-424-8914 | Contractor |
| Gottweid Construction Co., Inc. | Wayne Gottweid | 708-361-1820 | | Contractor |
| Greytawk Construction Co., Inc. | Mike Popp | 847-680-5902 | 847-680-5963 | Contractor |
| Great Lakes Group | Sandra Hleynek | 847-298-3737 | 847-298-1928 | Contractor |
| Groen Concrete, Inc. | Bruce Groen | 708-474-0428 | 708-474-0435 | Contractor |
| H. Borra & Sons | Ernst Borra, Jr. | 773-775-300 | 773-775-3004 | Contractor |
| Harry W. Kuhn, Inc. | Woodie Griffin | 630-293-1186 | 630-293-1179 | Contractor |
| Howard Concrete | Brian Howard | 630-942-1800 | 630-942-1824 | Contractor |
| II In One Contractors | Oliver Filer | 773-847-2100 | 773-847-4501 | Contractor |
| K. Keup Construction, Inc. | Kevin Keup | 630-879-6900 | 630-879-6333 | Contractor |
| Kustom Construction | Al Kus | 630-627-6300 | 630-627-0342 | Contractor |
| Lake Gilmer Construction | Jennifer | 847-526-2722 | 847-526-3462 | Contractor |
| Lively Construction Co. | Lynn Lively | 847-540-0200 | 847-436-1465 | Contractor |
| Lundsberg Corporation | Gary Lundsberg | 773-478-1810 | 773-478-2373 | Contractor |
| M.V. Masonry | Michael Volpentesta | 708-371-5655 | 708-371-6845 | Contractor |
| Malibu Construction, Inc. | Jim Rossi | 630-904-2228 | 630-904-8726 | Contractor |
| Manusco General Cont. | Charles Manusco | 847-973-0600 | 847-973-0600 | Contractor |

This Installment Note ("Note") is made between the Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Health and Welfare Fund" or collectively the "Funds"), the parties of the first part, and Ronson Construction (the "Company"), the party of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local DC the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of May 1, 2005 thru October 31, 2007 and reports November 2007 thru December 2007.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of  May 1, 2006 thru October 31, 2007.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1.  The Company will pay $19,322.35 to the Health and Welfare Fund (comprised of $15,410.19 in delinquent contributions, $3,052.53 in liquidated damages, $482.50 in audit costs and $377.13 in interest) (based on an interest rate of 8.50%). The Company will also pay $13,856.80 to the Pension Fund (comprised of $10,942.34 in delinquent contributions, $2,171.44 in liquidated damages, $482.50 in audit costs and $260.52 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2.  The Company will also pay $511.31 to the Training Fund (comprised of $424.64 in delinquent contributions, $84.19 in liquidated damages and $2.58 in interest), $77.19 to the CCA Fund (comprised of $69.30 in delinquent contributions, $6.93 in liquidated damages and $.96 in interest), $66.13 to the LECET Fund (comprised of $59.40 in delinquent contributions, $5.94 in liquidated damages and $.79 in interest), $132.29 to the LDCMC Fund (comprised of $118.80 in delinquent contributions, $11.88 in liquidated damages and $1.61 in interest) and $988.44 in union dues (comprised of $898.58 in delinquent contributions and $89.86 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time payment under this Note commences, in accordance with the schedule described in paragraph 4.

3.  The company will also pay the Funds the sum of $965.00 in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

4.  Simultaneously with the execution of this Note, the Company will pay twenty percent (20%) of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $3,715.27 to the Health and Welfare Fund and $2,637.46 to the Pension Fund.

5.  For six (6) consecutive months commencing on March 1, 2008 and ending on August 1, 2008, the Company will pay $2,601.18 per month to the Health and Welfare Fund and $1,869.89 per month to the Pension Fund.

6.  The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

7.  The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



EXHIBIT
B

the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 19th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 19th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

9. This Installment Note is conditioned on the Company's staying current on its obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the _10th_ day of the _March_ 2008.

Benson Construction

By: _Mhh Byl_

Title: _President_

Laborers' Pension Fund

By:_____

Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

By:_____

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of <u>March 10, 2008</u> by the undersigned, <u>Mike W Byrd</u>, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, **Benson Construction** (the "Company") has agreed to pay a total of **$34,954.51** to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. Guaranty of Payment and Indemnification. The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the six (6) month payment period including interest and liquidated damages for late or unpaid payments due on the note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgement bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. Continuing Guaranty. This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the party of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. Waivers. Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. Subrogation.  Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the guarantor expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note.

1



EXHIBIT
C
tabbies

The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other period (including and surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds form suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations form time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay. Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. Default. The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any

2

such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. **Warranties.** Guarantor makes to the Funds the following representations and warranties:

(a) **Authorization.** Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) **No Conflict.** The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) **Litigation.** There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgement or liability which may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) **Enforceability.** This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. **Notices.** All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in period, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

Mark W Berglund
3128 N Schoenbeck
Arlington Hts IL
      60004

In Case of the Funds:

Collection Counsel
Pat Wallace
Laborers Pension & Welfare Fund
Sub Office
53 W Jackson Blvd
Suite 660
Chicago IL 60604-3607

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. **Additional Waivers.** Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

3

17. Severability.  If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. Applicable Law; Venue.  This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue or any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. Time is of the Essence.  Time is of the essence of this Guaranty as to the performance of the undersigned.

20. Death of a Guarantor.  In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_____        _____        _____

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
Social Security Number                      _____        _____

Date: 3-10-2008                             _____        _____

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR:

_____

Dated: _____

4

# CONTRACT FOR CASH BOND

This agreement is entered into by The Laborers Pension Fund, the Health and Welfare Department of the Construction and General Laborers District Council of Chicago and Vicinity (the "Funds") and the following contributing employer to the Funds:

> Benson Construction Company
> 3128 N. Shoenbeck Road
> Arlington Heights, IL 60004

WHEREAS Article VII, Section 2 and Article VI, Section 2 of the agreements and declarations of trust establishing the aforementioned Pension Fund and Health and Welfare Fund to authorize the Funds to accept cash bonds as guarantees for the payment of monthly contributions to the Funds; and

WHEREAS contributing employers under the terms of the applicable collective bargaining agreement are required to post surety bonds or cash bonds in a form acceptable to the Construction and General Laborers District Council of Chicago and Vicinity (the "Union");

WHEREAS the Union has agreed to the establishment by the Funds of a bank account or money-market account or other account for the holding of cash bonds pursuant to contractors approved by the Boards of Trustees of the Funds; and

WHEREAS the Boards of Trustees of the Funds have approved the establishment by the Funds of a bank account or money-market account or other account for the holding of cash bonds by contributing employers;

NOW therefore, the parties hereby agree that:

1



EXHIBIT
D
tabbies

A.    <u>Procedures For Filing a Cash Bond and Use of the Bond</u>.

The Employer named above shall pay the amount listed below to the Funds as a cash bond to guarantee payment of employee wages, pension and welfare contributions owed to the Employer to employees of the Employer and/or to the Funds for work performed by the employees under the terms of a collective bargaining agreement between the Employer and the Construction and General Laborers District Council of Chicago and Vicinity;

The cash bond shall be used to satisfy on a pro rata basis amounts due for unpaid wages and/or unpaid contributions to the Funds, including liquidated damages and interest owed to the Funds; and

The Administrator of the Funds is authorized to deposit the cash payment listed below in an interest-bearing account, money-market account or other account for deposit of such funds to be selected at the discretion of the Administrator, to retain the interest earned on a said cash deposit to defray the expenses of the Funds for the administration of cash bonds and for the collection of delinquencies; and

To deduct from said account and pay to employees and/or to the Funds any amounts determined by the Administrator, based upon reasonably reliable information provided by representatives of the Union, the Field Representatives of the Funds or compliance auditors of the Funds or Union, the full amount of any unpaid wages or unpaid contributions, liquidated damages or interest.

The Administrator shall provide written notice at least ten (10) days in advance to the Employer of a determination by the Administrator to deduct sums from the cash bond to satisfy the claims for wages and/or unpaid contributions, liquidated damages or interest.

2

The Employer, within ten (10) days of the date of the notice sent by the Administrator, may make other arrangements to pay the wages and/or contributions determined to be owed by the Administrator and shall provide written evidence to the Administrator of such arrangements.

An objection by the Employer that the claimed wages and/or contributions are not due and owing shall not prevent the Administrator from directing the payment of claimed wages and/or contributions. If a determination is made at a later date that the wages paid to employees or the contributions, liquidated damages or interest paid to the Funds was not due and owing, the sole liability of the Funds shall be to restore the cash bond of any Employer to the extent of the contributions, liquidated damages and interest paid as contributions on behalf of the Employer that should not have been paid. Any claim of the Employer for wages improperly paid to employees shall be made against the employees who received the payments and not against the Funds or Administrator as long as the Administrator based the payments on information received from a source that the Administrator considered to be reasonably reliable. An auditor's report or employee affidavits shall be conclusive proof of such a reasonably reliable source.

B.    Procedures for Requesting a Refund of a Cash Bond

The Employer may request and obtain a refund of any balance of the cash bond being held by the Funds if the Employer ceases to do business for which contributions would be owed to the Funds under the terms of a collective bargaining agreement with the Union or during any period in which the Employer would be required to maintain existing terms and conditions of employment while negotiating over the terms to be included in a new collective bargaining agreement. The refund will be provided upon completion of an audit which verifies that there are no outstanding contributions, interest, liquidated damages and/or audit costs revealed as due and owing for the period of time

3

under which the Funds have held the Cash Bond. The Cash Bond may be refunded prior to the completion of any audit if the shareholders of the Company personally guarantee any indebtedness that may be revealed pursuant to an audit of the Company's books and records for the time period during which the Funds held the Cash Bond.

An Employer may obtain a refund of the cash bond if the Employer provides a surety bond written by an insurance carrier with reserves in excess of $1,000,000 authorized, licensed, or permitted to do business in the state of Illinois; provided that the amount of said surety bond is in compliance with the terms of the Employer's collective bargaining agreement with the Union or any amount previously prescribed by the Trustees for a delinquent employer equal to three times the monthly contributions of such Employer, as estimated by the Trustees, in accordance with the terms of the agreements and declarations of trust of the Funds.

No cash refund shall be paid to the Employer until the Employer has provided the necessary surety bond or evidence satisfactory to the Administrator that the employer has ceased doing business that would require contributions to the Funds. If the Employer fails to provide a refund request along with the necessary supporting information within three years of the date on which the Employer last contributed to the Funds, the Employer shall forfeit its right to a refund and the Administrator shall transfer any balance credited to the Employer to the general accounts of the Funds to defray the costs of employer delinquencies.

C.    Amount of Cash Bond

This agreement for the payment and deposit of a cash bond in the amount of $5,000.00 with $500.00 due at signing and nine (9) equal monthly payments in the amount of $500.00 made on the first day of each month commencing on June 1, 2008 and continuing up and through February 1,

4    U:\SHARED\BCC 3\CONTRACT CASH BOND.DOC

2009 is entered into this _____8th_____ day of May, 2008 by the undersigned representatives of the

Employer and Funds:

For the Employer:                          For the Funds:

*Mark W Berglund*                          *[signature]*
                                           Administrator

Position: *President*                      Date: _____5/14/08_____

Date: 5-8-08